# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ERIKA SANCHEZ, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Cause No. 1:10-cv-1578-WTL-DML |
| | ) | |
| HELMER, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's motion for summary judgment (docket #42). The motion is ripe, and the Court rules as follows.

## I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court

is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. <u>FACTUAL BACKGROUND</u>

The facts read in the light most favorable to the non-movant follow.[1] Defendant Helmer, Inc., is a manufacturer and worldwide distributor of high-quality products for the life sciences industry. Plaintiff Erika Sanchez began working for Helmer on December 2, 2002, as an International Sales and Marketing Coordinator. Sanchez reported directly to Richard Forero, International Sales Manager. Forero is currently employed by Helmer and is responsible for all sales and marketing for Helmer's international business.

From her date of hire until August 2005, Sanchez worked at Helmer's corporate headquarters in Noblesville, Indiana. In May 2005, Sanchez informed Forero and Helmer President David Helmer that she was moving to Bloomington, Indiana, and would no longer continue her employment with Helmer. Thereafter, in August 2005, Forero made the decision to allow Sanchez to perform her job responsibilities remotely from Bloomington, Indiana.

On February 17, 2006, Sanchez gave birth to a daughter. Plaintiff subsequently took a maternity leave as a result of the birth of this child. When she returned to work following her maternity leave, she returned to the same position she had previously held.. Mr. Forero was Plaintiff's supervisor at the time of this leave.

---

[1] Large sections of Helmer's statement of facts are undisputed, so the Court has adopted Helmer's statement where appropriate. However, where Sanchez has disputed Helmer's facts, the Court has adopted those facts supported by the evidence and has construed them in the light most favorable to Sanchez.

In the fourth quarter of 2007, Forero expressed concern to Helmer that the disadvantages of Sanchez's remote working arrangement might soon surpass any advantages associated with allowing her to continue working from home. However, no decision with respect to her position was made at that time.

From January 4, 2008, through March 3, 2008, Sanchez was on leave as a result of the January 4, 2008, birth of another child. As was the case before, when she returned from maternity leave, Sanchez returned to the same position she had previously held. Mr. Forero was Sanchez's supervisor at the time of this leave.

In April 2009, as part of the reorganization of the Sales and Marketing Department, Aaron Stout assumed responsibility for the International Sales Group. Shortly thereafter, Stout and Forero discussed the integration of the International Department with other departments. The purpose of the reorganization was to improve workflow and utilization of resources. Sanchez was aware of the reorganization and agreed that it would benefit Helmer. Forero and Stout also discussed the usefulness of allowing Sanchez to continue to work from home in light of the ongoing reorganization efforts. According to Forero, once the International Department was integrated into Sales and Marketing, there would be a heightened need for an experienced member of the International Department to be physically located at the corporate headquarters. Sanchez was not involved in any discussions with Stout and Forero regarding the usefulness of allowing her to continue to perform her duties remotely.

On May 28, 2009, Sanchez met with Forero to review her job performance. Sanchez had previously received positive performance evaluations from Forero and she received another favorable review from Mr. Forero. The performance evaluation made no mention of any

difficulty with her remote work status, stating that "she is very valuable to the International Department and no one else within Helmer is prepared to handle or knowledgeable of the intricacies this job carries." According to Sanchez, Forero never told her, at this review or otherwise, that her remote status was temporary or subject to review.

Forero traveled to Helmer's headquarters in Noblesville, Indiana, in early September 2009. On Forero's arrival in Indianapolis on September 8, 2009, he spoke with Sanchez on the telephone while he was traveling from the airport to headquarters. During this conversation, Sanchez informed him that she was pregnant. Prior to this conversation, Forero was not aware that Sanchez was pregnant. In fact, prior to September 8, 2009, Sanchez had not informed anyone at Helmer of her pregnancy. After Sanchez told Forero her news, Forero contacted Helmer Human Resources manager Cindy Gallien and asked her whether Sanchez's pregnancy would alter Helmer's decision to relocate Sanchez's position to corporate headquarters. Gallien informed Forero that it would not affect Helmer's decision.

The date Forero made the decision to terminate Sanchez's remote working arrangement is disputed, but it is clear that on September 10, 2009, Forero set up a meeting with Sanchez for later that same afternoon. At that meeting, Forero asked Sanchez how her pregnancy was progressing. He then informed Sanchez that he had reevaluated her position and concluded that her remote work arrangement was no longer benefiting Helmer. As a result, he made the decision to bring her position back to the corporate headquarters in Noblesville, Indiana. Prior to this meeting, Forero had never told Sanchez that her remote work status was a problem or that it in any way prevented her from performing any of her job duties. Forero then asked Sanchez if she would be willing to continue performing her duties from Helmer's corporate headquarters. When

4

Sanchez told Forero that she could not give him an answer immediately, Forero opened his calendar and scheduled Sanchez's last day of employment to coincide with the her last date of work prior to her anticipated maternity leave. In making this calculation, Forero spoke about the possibility of medical complications impacting this time frame as Sanchez had suffered complications during prior pregnancies. Forero then discussed the process of looking for Sanchez's replacement and whether Sanchez would be able to assist in training her replacement. He also suggested that she could still help out with "side projects" after she had given birth. Sanchez never told anyone at Helmer that she was unwilling to continue her employment on-site at Helmer's headquarters in Noblesville, but her employment with Helmer ended on December 23, 2009.

Sanchez trained Laura DeVault, an internal candidate, to fill the new position of International Customer Service, in which position DeVault would perform many of the job duties Sanchez had performed as International Sales Assistant. DeVault had no previous international experience and was not pregnant.

On December 8, 2010, Sanchez filed suit against Helmer alleging that her remote working arrangement was eliminated due to her pregnancy in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act. Helmer now moves for summary judgment on Sanchez's claim.

### III. DISCUSSION

Title VII makes it unlawful for an employer to discriminate against an individual with respect to that person's hiring, discharge, or employment conditions because of that person's race, sex, religion, color, or national origin. 42 U.S.C. § 2000e-2(a)(1). The ban on sex

discrimination in employment includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. 2000e(k).

A plaintiff may prove unlawful employment practices directly or indirectly. "To avoid summary judgment under the direct approach, the plaintiff must produce sufficient evidence . . . to create a triable question of intentional discrimination in the employer's decision." *Silverman v. Board of Educ. of Chicago*, 637 F.3d 729, 733 (7th Cir. 2011). The plaintiff proceeds under the direct method by proving the practice by either direct or indirect evidence. Direct evidence under the direct method proves the decision maker's discriminatory intent without reliance on inference or presumption. *Id.* at 734. It amounts to an acknowledgment of discriminatory intent by the decision maker. *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) (explaining that employers are unlikely to be caught making statements that directly evidence discrimination, such as "I fired Judy because she was an old woman"). Indirect or circumstantial evidence relies on inference to create a "convincing mosaic" of evidence indicating intentional discrimination by the decision maker. *Silverman*, 637 F.3d at 734

Helmer argues that it is entitled to summary judgment because the evidence establishes that Forero made the decision to terminate Sanchez's remote working arrangement on August 17, 2009, before Forero knew Sanchez was pregnant. It is axiomatic that an employer know of an employee's membership in a protected class before an employer can be accused of discriminating against an employee on the basis of that membership. If the evidence established that Forero made his decision before he knew Sanchez was pregnant, then Helmer would be entitled to summary judgment because Forero could not have made a decision to terminate the arrangement on the discriminatory basis alleged – that is, Sanchez's pregnancy. However, the

affidavit setting forth this evidence is not unassailable. Sanchez asserts that it is "unsupported by any documentation or other factual support in the record, " and also contends that Forero's affidavit contradicts his deposition testimony and the testimony of his colleagues. According to Sanchez, this creates a dispute as to when the decision was made, a dispute only a jury may resolve. Without the benefit of this affidavit, so the argument goes, the remaining evidence supports a reasonable inference that Forero made the decision to terminate Sanchez's remote working arrangement after he learned of her pregnancy and did so for that very reason. Accordingly, Sanchez argues that the Court must deny Helmer's motion for summary judgment. The Court agrees.

Sanchez has raised a substantial credibility issue with respect to the timing of Forero's decision to terminate her remote working arrangement. In a sworn declaration dated August 9, 2011, Forero states:

> From August 10 to August 14, 2009, Mr. Stout and I discussed the need to move Plaintiff's position back to corporate headquarters. On August 17, 2009, I informed Mr. Stout that it was no longer practical for Plaintiff's position to be done remotely. Instead, her position would be moved back to corporate headquarters in Noblesville, Indiana. I also informed Mr. Stout that I would be traveling to Indiana to conduct sales training in September of 2009 and that I would meet with Plaintiff and inform her of my decision at that time.

It is this declaration that formed the basis for the Defendant's assertion in its Statement of Undisputed Material Facts to the same effect. However, the credibility of Forero's statements is questionable because, while he was inexplicably able to state with specificity the relevant dates when he provided his affidavit, he remembered very little about the timing of his decision a little

7

more than one month later at his deposition.[2] In addition, unlike other employment-related

decisions, there is a complete absence of documentation supporting the version of events to

which Forero attested. Finally, the language of Forero's affidavit is curiously inconsistent with

other deposition testimony: (1) Forero testified at his deposition that he, Stout, and Gallien made

the decision; and (2) Stout testified that he would have had to approve any decision Forero made.

Given the shadow these curiosities cast on Forero's affidavit, the Court declines to credit

Forero's statement that the decision was made on August 17, 2009.[3]

In the absence of conclusive evidence regarding the date Forero made his decision,

Sanchez argues that a reasonable inference arises that the decision was made after he learned of

her pregnancy and he decided to terminate her remote working arrangement for that reason.

Sanchez argues that she can prove her case under the "convincing mosaic" rubric, which derives

discriminatory intent from (1) "suspicious timing, ambiguous statements [sic] oral or written,

behavior toward or comments directed at other employees in the protected group, and other bits

and pieces from which an inference of discriminatory intent might be drawn," (2) systematic

better treatment of similarly situated employees who are not members of the protected class; and

---

[2] The Defendant argues that Stout's and Gallien's deposition testimony supports Forero's contention that he made the decision in August, but this testimony is speculative at best. Stout first testified that he could not remember when the decision was made and only "remembered" that the decision was made in August when defense counsel asked him whether the decision was made before September 2009. Gallien testified that she did not remember the exact time and it would have "probably" occurred in the second quarter of 2009. She then further qualified her answer, stating "I don't want to say what we would have done."

[3] Although not material to this issue, the Court notes another inconsistency: Forero attests that "all Outside Sales Representative positions were eliminated" effective December 31, 2009, but Gallien testified that Regional Sales Representative Bev Muth continued to work remotely from York, Pennsylvania, when Gallien left Helmer's employ in September 2010.

(3) "evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Construing all facts and drawing all reasonable inferences in Sanchez's favor, the Court concludes that a reasonable jury could find that Sanchez was the victim of discrimination based on her pregnancy. Therefore, Helmer is not entitled to summary judgment.

Finally, Helmer argues that it is entitled to summary judgment on Sanchez's claim for punitive damages. A party may recover punitive damages under Title VII if he or she demonstrates that the defendant engaged in a discriminatory practice with malice or reckless indifference to the federally protected rights of an aggrieved individual. 42 U.S.C. § 1981a(b)(1). Helmer argues that Sanchez has failed to identify any evidence from which a jury could reasonably find that Forero acted with malice or reckless indifference. The Court agrees. Sanchez argues that

> [t]he clear implication presented by the totality of the evidence is that once Helmer learned Sanchez was pregnant, it set about to terminate her by ending her remote work status, immediately thereafter setting her termination date for the date on which she anticipated taking maternity leave, and fabricating non-sensical reasons for its actions after the fact.

She then takes a conclusory leap, stating that this evidence is sufficient to support a conclusion that Forero and/or Helmer acted with malice or reckless indifference. Yet, in truth, Sanchez has done no more than set out an intentional discrimination case; she has not identified any evidence tending to show Forero's state of mind. For this reason, summary judgment on Sanchez's claim for punitive damages is warranted.

9

# IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment as to the Plaintiff's claim for discriminatory termination of her remote working arrangement is **DENIED.** The Defendant's motion for summary judgment as to the Plaintiff's claim for punitive damages is **GRANTED**.

SO ORDERED:  05/11/2012

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication